UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

─────────────────────────────

JAMES K. MULLER,                               CIVIL NO. 10-495 (PJS/JSM)

    Petitioner,

v.                                             **REPORT AND RECOMMENDATION**

SCOTT FISHER, Warden, FCI-Sandstone,

    Respondent.

─────────────────────────────

JANIE S. MAYERON, United States Magistrate Judge.

This matter is before the undersigned Magistrate Judge of the District Court on Petitioner, James K. Muller's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [Docket No. 1]. The matter has been referred to this Court for a Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c).

**I.  BACKGROUND**

Petitioner, James K. Muller ("Muller"), is presently incarcerated at the Federal Correctional Institution in Sandstone, Minnesota. See Declaration of J. Scott Farr ("Farr Decl."), ¶ 3.

On January 28, 1985, Muller was arrested by federal authorities in the State of Hawaii for murder and attempted murder. Id., ¶ 4. On July 30, 1985, Muller was sentenced in the United District Court District of Hawaii on eight different offenses as follows:

- 90 months for Counts 3 and 4: Conspiracy to Commit Simple Assault, 18 U.S.C. §§ 371 and 113(e);

1

- Life term of imprisonment for Count 5: First Degree Felony Murder, 18 U.S.C. § 1111;

- 25 years for Count 6: 2nd Degree Murder, 18 U.S.C. §1111;

- 5 years each for Counts 7 and 8: Kidnaping,18 U.S.C. § 1201(a)(2);

- 20 years for Count 9: Assault With Intent to Commit Murder, 18 U.S.C. § 113(a); and

- 5 years for Count 10: Illegal Possession of a Firearm, 18 U.S.C. § 924(c).

Id., ¶ 5, Attach. 3 (Judgment and Probation/Commitment Order).

The sentences for Counts 3, 4, 6, 7, 8, and 9 were ordered to run concurrently with the life sentence for Count 5. Id. Count 10 for the § 924(c) violation was ordered to run consecutively with Count 5. Id. Consequently, Petitioner's total term of imprisonment was life plus five years. Id.

The Judgment did not provide in what order Counts 5 and 10 were to run. Prior to the Supreme Court's ruling in United States v. Gonzalez, 520 U.S. 1 (1997), the Bureau of Prisons ("BOP") required that the non-paroleable § 924(c)[1] offense be served before the paroleable offense. Id., ¶ 10. Under this practice, Petitioner was required to first serve his five-year non-parolable § 924(c) sentence, and then serve his life sentence, for which he would be eligible for parole ten years into the life sentence. According to Petitioner, he had completed his sentence for the § 924(c) offense (3 years and 7 months, with good time credit) and had begun serving the life sentence in 1988. See Memorandum of Law in Support of Motion to Correct Computation of Sentence,

---

[1] Petitioner was convicted under 18 U.S.C. § 924(c), part of which provided at the relevant time that "[n]o person sentenced under this subsection shall be eligible for parole during the term of imprisonment imposed herein."

Pursuant to 28 U.S.C. § 2241 [Docket No. 2] ("Petitioner's Mem."), p. 3. After serving ten years into his life sentence, by statute, Petitioner then would be eligible for parole in 1998. See 18 U.S.C. § 4205(a) ("Whenever confined and serving a definite term or terms of more than one year, a prisoner shall be eligible for release on parole after serving one-third of such term or terms or after serving ten years of a life sentence or of a sentence of over thirty years, except to the extent otherwise provided by law.").

In Gonzalez, the Supreme Court held that the plain language of § 924(c) does not require that the firearms offense be served before any other offense. 520 U.S. at 6-8. Based on Gonzalez, the BOP subsequently issued guidance, providing that the order of a sentence will be dependent on the order the counts are listed in a judgment. See Farr Decl., ¶ 10, Attach 6 Program Statement 5880.30, Chapter, VII, p. 16E. Here, the § 924(c) offense is listed as Count Ten, the last count stated in the Judgment. Id., ¶ 5, Attach. 3.

On January 30, 1998, the United States Parole Commission ("USPC") issued a notice to Petitioner, which provided that it was continuing Petitioner's parole consideration from 1988 until January 2013, based on his underlying offense and the three non-drug infractions he had committed while incarcerated. Id., ¶ 6, Attach. 5 (USPC Notice of Action); see also Muller v. Zuercher, NO. 07-CV-1142, 2008 WL 4936724 at *1 (C.D. Ill. Nov. 17, 2008). The USPC also provided that Petitioner was entitled to a statutory interim hearing in January of 2000. Id.

In March 1998, the BOP issued a re-computation of Petitioner's sentence requiring that the life sentence run first. See Declaration of Angie Coyle ("Coyle Decl."), Ex. A (Government Response to Petitioner's § 2241 petition in the Central District of

Illinois), Appendix 6, pp. 2-3 (Sentencing Monitoring Computation Data as of 10-23-2007); see also Farr Decl., ¶ 10. This re-computation resulted in the recalculation of Petitioner's parole date. Id. Parole eligibility on Petitioner's life sentence was established ten years after the commencement of his custody—January 27, 1995. See Farr Decl., ¶ 6, Attach. 4 (Public Information Inmate Data), p. 4 of 4; see also Coyle Decl., Ex. A, Appx. 6, p. 3. In addition, pursuant to 18 U.S.C. § 4206(d), an inmate eligible for parole is entitled to a parole review by the USPC after the inmate has completed two-thirds of his or her sentence. See Farr Decl., ¶ 7. Under 18 U.S.C. § 4206(d), "any sentence that is forty-five years or longer (including a life sentence) will be eligible for parole under this section (18 USC 4206(d)) after serving thirty years."[2] See also Farr Decl., Attach. 8 (Program Statement 5880.30, Chapter, VII, p. 13. In this case, Petitioner's two-thirds date was re-calculated as January 27, 2015, twenty years after parole eligibility. Id., ¶ 7, Attach. 4 (Public Information Inmate Data), p. 4 of 4; see also Coyle Decl., Ex. A, Appx. 6, p. 3. Pursuant to the re-computation of the sentence,

---

[2] The full text of § 4206(d) provides:

> Any prisoner, serving a sentence of five years or longer, who is not earlier released under this section or any other applicable provision of law, shall be released on parole after having served two-thirds of each consecutive term or terms, or after serving thirty years of each consecutive term or terms of more than forty-five years including any life term, whichever is earlier: Provided, however, That the Commission shall not release such prisoner if it determines that he has seriously or frequently violated institution rules and regulations or that there is a reasonable probability that he will commit any Federal, State, or local crime.

18 U.S.C. § 4206(d).

Petitioner will begin to serve his sentence for his non-parolable § 924(c) offense on the parole date of the life sentence. See Farr Decl., ¶ 8.

In June 2007, Petitioner filed a § 2241 habeas petition in the Central District of Illinois alleging that had the BOP not ordered him to serve his § 924(c) sentence first, and instead allowed him to serve his life sentence before the § 924(c) sentence as set forth in the sentencing court's commitment order, he would have been eligible for parole three years earlier. See Coyle Decl., Ex. B (Petitioner's § 2241 Habeas Petition in the Central District of Illinois), pp. 2-4. Petitioner claimed this denial of the earlier parole eligibility date violated his right to due process under the Fifth Amendment. The federal court in Illinois denied this claim on the basis that Petitioner had failed to exhaust his administrative remedies. Muller, 2008 WL 4936724 at *3. The court also interpreted the petition as asserting a constitutional challenge to the USPC's decision to continue his parole eligibility hearing by 15 years. Id., at *4. The court rejected the claim, concluding that the USPC's decision to continue the parole eligibility hearing was rationally based on the aggravating circumstances of Petitioner's crime and the infractions he committed while in prison. Id.

Petitioner has now filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, claiming that the "BOP's recomputation [sic] of the sentence, sua sponte, after the § 924(c) had been served, violated due process and the double jeopardy clause of Fifth Amendment and usurped the authority of the Parole Commission." See Petition at p. 9. Petitioner asserted that he had completed his sentence for his § 924(c) offense (3 years and 7 months, with good time credit) and had begun serving his life sentence in 1988. See Petitioner's Mem., p. 3. According to

5

Petitioner, this would have allowed him to be eligible for parole in 1998, after 10 years, and for reconsideration after 25 years in 2013, which is reflected by the USPC's continuation of his parole eligibility date to 2013. Id., pp. 3-4. Petitioner asserted that the BOP had "flipped" his sentence to have the life sentence run first, even though nothing in the Supreme Court's Gonzalez decision mandated the order that sentences should run. Id., p. 4. Petitioner claimed that the BOP's reconsideration of his sentence in January 1998 effectively extended his date for parole consideration from 2013 to 2018, by removing without authorization of the USPC after a hearing, the 3.7 years he had already served for the § 924(c) conviction, and thereby violated his right to due process. Id., pp. 4-6. Further, Petitioner argued that requiring him to re-serve the sentence for his § 924(c) offense violated the Double Jeopardy Clause of the Fifth Amendment. Id., p. 8.

The Government countered that Petitioner has previously filed a writ of habeas corpus in the Central District of Illinois in 2007 and thus, his current petition should be denied as a successive petition or as abuse of the writ. See Response to Petition for Writ of Habeas Corpus [Docket No. 5], p. 3. The Government claimed that Petitioner could have made his present arguments in the prior petition and that no facts have changed since that time. Id., p. 3. The Government also maintained that the 1998 decision by the USPC to give Petitioner a 15-year reconsideration hearing was based on the violent nature of Petitioner's crimes and several infractions by Petitioner while in prison, and was unrelated to the re-computation of his sentence. Id., pp. 7-8 (citing Muller, 2008 WL 4936724 at *4). Further, the Government argued that because Petitioner's sentence was computed in accordance with the applicable statutes, and

6

none of the changes made affected the duration of his sentence or adversely affected the date by which he was entitled to reconsideration for parole, Petitioner could not make a showing that there has been a due process violation. Id., p. 12. Finally, the Government contended that switching the order of a sentence did not implicate the Double Jeopardy Clause and that all time Petitioner has served since his initial custody will be applied towards his life sentence. Id.

## II. ANALYSIS

### A. Abuse of Writ

"The doctrine of abuse of the writ defines the circumstances in which federal courts decline to entertain a claim presented for the first time in a second or subsequent petition for a writ of habeas corpus." McCleskey v. Zant, 499 U.S. 467, 470 (1991). "[A]busive claims must always be read in light of the equitable proposition that petitioners 'should include all reasonably available claims and grounds for relief in their first habeas petition.'" Rehbein v. Clarke, 94 F.3d 478, 483 (8th Cir. 1996) (quoting Washington v. Delo, 51 F.3d 756, 760 (8th Cir. 1995), cert. denied, 516 U.S. 876 (1995)). The United States Supreme Court has characterized the abuse of writ analysis as follows:

> When a prisoner files a second or subsequent application, the government bears the burden of pleading abuse of the writ. The government satisfies this burden if, with clarity and particularity, it notes petitioner's prior writ history, identifies the claims that appear for the first time, and alleges that petitioner has abused the writ. The burden to disprove abuse then becomes petitioner's. To excuse his failure to raise the claim earlier, he must show cause for failing to raise it and prejudice therefrom as those concepts have been defined in our procedural default decisions. The petitioner's opportunity to meet the burden of cause and prejudice will not include an evidentiary hearing if the district court determines as a

> matter of law that petitioner cannot satisfy the standard. If petitioner cannot show cause, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim.

McCleskey, 499 U.S. at 494-95. The excuses for an abuse of the writ include situations where the petitioner can show cause for their failure to raise the new issue in their first petition or prejudice. See LaRette v. Bowersox, 70 F.3d 986, 987 (8th Cir.1995) ("To excuse an abuse of the writ, a successive habeas petitioner must show either cause and prejudice, or probable actual innocence."), cert. denied, 516 U.S. 1005 (1995) (citation omitted).

In June 2007, Petitioner filed a § 2241 habeas petition in the Central District of Illinois, alleging that the BOP's order that he serve his § 924(c) offense first, instead of permitting him to serve his life sentence before the § 924(c) sentence, violated his right to due process. The court dismissed this claim on the basis that Petitioner had failed to exhaust his administrative remedies. The court also dismissed Petitioner's challenge to the BOP's decision to continue his parole eligibility hearing for 15 years on the basis that the decision was rationally-based and did not violate the Constitution.

This Court agrees with the Government that Petitioner could have made the claim that he is asserting in the present Petition in his first § 2241 habeas petition, given that the available facts have not changed since 2007. By 2007, the BOP had already changed the order of his sentence and recalculated his parole eligibility. Further, the decision by the Supreme Court in Gonzalez had been rendered ten years before the 2007 Petition. There was nothing prohibiting Petitioner from raising the issue regarding the propriety of the BOP "flipping" his sentence (including his due process and double

8

jeopardy claims) as an alternative claim to the claims raised in his first habeas petition. In addition, Petitioner has not provided this Court with any evidence to show cause, prejudice or fundamental miscarriage of justice so as to excuse his failure to raise these issues in the 2007 habeas petition.

As such, the Court finds that the present Petition is an abuse of writ and should be dismissed on this ground.

### B. Due Process Violation[3]

Petitioner claimed that the BOP's reconsideration of his sentence effectively extended his date for parole consideration from 2013 to 2018, without authorization of the USPC after a hearing, thereby violating his right to due process. This Court finds otherwise. As a preliminary matter, the Court notes that United States Supreme Court has held that there is no constitutional right to parole. Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). In any event, Petitioner has not provided any evidence for his assertion that his parole reconsideration date has been extended by five years to 2018 without a hearing, based on the March 1998 re-computation of his sentence due to the decision in Gonzalez. Based on the re-computation, Petitioner became eligible for parole in 1995, three years earlier than the pre-Gonzalez computation. His two-thirds reconsideration time of 30 years also ends earlier, in 2015, based on the re-computation. Further, based on the available evidence in the record, the USPC's January 30, 1998 notice continuing

---

[3] In an abundance of caution, the Court will discuss the merits of the Petition, since the Court also concludes that the Petition should be dismissed on the merits. See, infra.

9

Petitioner's parole consideration (due to his offense and the three non-drug infractions he had committed while incarcerated), Petitioner will receive a parole reconsideration hearing in January 2013. In short, there is nothing in the record to suggest that the January 2013 reconsideration was continued to 2018 based on the re-computation of the sentence.

### C. Double Jeopardy Claim

Petitioner argued that requiring him to re-serve the sentence for his § 924(c) offense violated the Double Jeopardy Clause of the Fifth Amendment. This Court disagrees. The Fifth Amendment's Double Jeopardy Clause affords a defendant with three protections:

> '[I]t protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'

Ohio v. Johnson, 467 U.S. 493, 497-98 (1984) (quoting Brown v. Ohio, 432 U.S. 161, 165 (1977); see also Bally v. Kemna, 65 F.3d 104, 106 (8th Cir. 1995) (citation omitted). However, "[a]bsent an increase in the aggregate term of imprisonment, the mere change in the order in which the consecutive sentences are served does not constitute multiple punishment for the same offense." Harris v. Hurley, NO. 99-1382, 210 F.3d 389, 2000 WL 358388 at *3 (10th Cir. April 06, 2000), cert. denied, 531 U.S. 865 (2000) (citing United States v. Markus, 603 F.2d 409, 414 (2d Cir. 1979)).

Petitioner has not asserted that the time he initially spent on his § 924(c) offense was not applied towards his life sentence. Indeed, his sentence computation sheet provides that he has been receiving credit for his incarceration towards his life sentence since January 28, 1985, the date of his arrest for his federal offenses. See Farr Decl.,

Attach. 4, p. 4 of 4.  The mere fact that the order of Petitioner's consecutive sentences has changed, without a showing that his punishment as ordered will increase, does not amount to a viable double jeopardy claim.

## III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that:

Petitioner, James K. Muller's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [Docket No. 1] be **DISMISSED WITH PREJUDICE**.

Dated:   December 1, 2010

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

## NOTICE

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **December 14, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within fourteen days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.