UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **James K. Muller,** | **Civil No. 10-CV-495 (SRN/JSM)** |
| Petitioner, | ORDER |
| v. | |
| **Scott Fisher, Warden, FCI-Sandstone,** | |
| Respondent. | |

James K. Muller, 81421-022, FCI, P.O. Box 1000 Unit J, Sandstone, Minnesota 55072, Pro Se

D. Gerald Wilhelm and Gregory G. Brooker, United States Attorney's Office, 300 South 4th Street Suite 600, Minneapolis, Minnesota 55415, for Respondent

___

SUSAN RICHARD NELSON, United States District Court Judge

This matter is before the Court on the Report and Recommendation ("R&R") of Magistrate Judge Janie S. Mayeron (Doc. No. 9). In the R&R, the Magistrate Judge recommended that the Court deny Petitioner James K. Muller's Petition for a Writ of Habeas Corpus (Doc. No. 1) in its entirety and dismiss this action with prejudice. Petitioner filed timely objections to the R&R.

According to statute, the Court must conduct a de novo review of any part of the Magistrate Judge's opinion to which specific objections are made. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); D. Minn. L.R. 72.2(b). Based on that de novo review, the Court adopts the R&R in part and remands the Petition to the Magistrate Judge for further consideration.

**I.      BACKGROUND**

The R&R included a detailed and thorough recitation of the facts of this case, therefore, the Court will only briefly recount the salient facts here. On January 28, 1985, Petitioner was arrested in Hawaii and charged with murder and attempted murder. He was subsequently found guilty on eight different counts, and sentenced on July 30, 1985, as follows:

- 90 months for Counts 3 and 4: Conspiracy to Commit Simple Assault, 18 U.S.C. §§ 371 and 113(e);

- Life term of imprisonment for Count 5: First Degree Felony Murder, 18 U.S.C. § 1111;

- 25 years for Count 6: Second Degree Murder, 18 U.S.C. § 1111;

- 5 years each for Counts 7 and 8: Kidnaping, 18 U.S.C. § 1201(a)(2);

- 20 years for Count 9: Assault With Intent to Commit Murder, 18 U.S.C. § 112(a); and

- 5 years for Count 10: Illegal Possession of a Firearm, 18 U.S.C. § 924(c).

The sentences for Counts 3-4 and 6-9 were ordered to run concurrently with the life sentence imposed pursuant to Count 5. The sentence for Count 10 was ordered to run consecutively to Count 5, which gave Petitioner a total term of imprisonment of life plus five years. (Farr Decl. ¶¶ 3-5 (Doc. No. 6).) Notably, the offense listed in Count 10 does not allow for the possibility of parole for an individual convicted thereunder. 18 U.S.C. § 924(c)(D)(i).

Because the sentencing order did not specify the order in which the counts were to be served, the Bureau of Prisons ("BOP"), pursuant to existing regulations, required that the non-parolable offense (Count 10) be served first. But after the Supreme Court's ruling in United States v. Gonzales, 520 U.S. 1 (1997), which held that punishment for a non-parolable offense

2

need not be served before punishment for a parolable offense, id. at 6-8, the BOP issued guidance that stated that the order of a defendant's sentence should be calculated pursuant to the order of charges listed on the judgment form.  (Farr Decl. ¶ 10, Attach. 6.)  Petitioner's non-parolable offense was listed last on his judgment form, and therefore his sentence was reordered in March 1998, so that his life sentence would be served before his five-year sentence for Count 10.  This gave Petitioner an earlier parole eligibility date of January 27, 1995.  (Coyle Decl. Ex. A. at 4.)

Before this re-computation occurred, however, on January 30, 1998, the U.S. Parole Commission issued a notice to Petitioner in which it stated that the Commission was continuing Petitioner's parole consideration until January 2013, based on the severity of Petitioner's underlying offense and his multiple infractions while incarcerated.  (Farr Decl. ¶ 6, Attach. 5.) The notice also stated that Petitioner was scheduled for a "statutory interim hearing" in January 2000.  (Id.)  Petitioner appealed this decision on May 1, 1998, which was subsequently affirmed by the U.S. Parole Commission on three separate occasions.  (Coyle Decl. Ex. A. at 4.)

Petitioner previously filed a petition for a writ of habeas corpus in the Central District of Illinois in 2007.  Muller v. Zuercher, No. 07-1142, 2008 WL 4936724 (N.D. Ill. Nov. 17, 2008). In its denial of Petitioner's claim, the court held that Petitioner had not exhausted his administrative remedies and that the U.S. Parole Commission's decision to give Petitioner a 15-year reconsideration hearing was based on his underlying offense and further infractions committed while incarcerated, not the re-computation of his sentence. Id. at *4.  It is undisputed that Petitioner has now exhausted his administrative remedies.

Petitioner has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, arguing that "[t]he BOP's re-computation of the sentence, sua sponte, after the § 924(c) [offense]

3

had been served, violated due process and the double jeopardy clause of the Fifth Amendment and usurped the authority of the Parole Commission." (Pet. at 9.)  In the R&R, Magistrate Judge Mayeron rejected these arguments, finding that Petitioner had abused the writ, that no due process violation had occurred, and that double jeopardy did not attach.  Petitioner filed timely objections, however, he did not object to the R&R's dismissal of his double jeopardy claim.  The Court therefore summarily adopts the R&R as to that claim, and will address the others in turn.

## II.   DISCUSSION

### A.   Abuse of Writ

"The doctrine of abuse of the writ defines the circumstances in which federal courts decline to entertain a claim presented for the first time in a second or subsequent petition for a writ of habeas corpus."  McCleskey v. Zant, 499 U.S. 467, 470 (1991).  This doctrine requires prisoners to "include all reasonably available claims and grounds for relief in their first habeas petition."  Washington v. Delo, 51 F.3d 756, 760 (8th Cir. 1995).

In this case, the Magistrate Judge held that, because Petitioner could have raised his claims in his first habeas petition filed with the Central District of Illinois, he has abused the writ and must be barred from asserting his claims here. (R&R at 8-9.)  But as Petitioner points out in his objections, the Central District of Illinois dismissed his claim regarding the reordering of his sentence without prejudice because he had not exhausted his administrative remedies. (Muller, 2008 WL 4936724, at *4.)  As noted above, the re-computation issue is precisely what Petitioner is pursuing in the instant Petition.  As the Government concedes, because Petitioner has now exhausted his administrative remedies, his claim should be addressed on the merits. (See U.S. Resp. to Obj. at 1.)  Thus, the Court declines to adopt the Magistrate Judge's recommendation to

deny the Petition based on an abuse of the writ and remands it to the Magistrate Judge for consideration on the merits.

**B.     Due Process Violation**

To obtain a writ of habeas corpus, Petitioner must demonstrate that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States."  18 U.S.C. § 2241(c)(3). Pursuant to this requirement, Petitioner asserts a violation of his right to due process of law.  To prevail on a due process claim, Petitioner must show that "some legal entitlement, right or liberty interest that is protected under state or federal law" has been abridged.  Peck v. Hoff, 660 F.2d 371, 373 (8th Cir. 1981) (citations omitted).

Petitioner argues that the Magistrate Judge erred by finding that the BOP's re-computation of his sentence did not violate his due process rights.  Petitioner states that he had already served the punishment for his non-parolable offense over the first 3 years and 7 months of his incarceration, including credit for good behavior, by the time the BOP re-computed his sentence in 1998.  Petitioner argues that, because he began serving his sentence in 1985, pursuant to the Parole Commission and Reorganization Act, 18 U.S.C. § 4201 et seq. ("PCRA"),[1] he should have been eligible for parole in 2010—25 years from the beginning of his incarceration—instead of 2013.  (Pet'r's Obj. at 4.)

Petitioner's objection unnecessarily muddies the waters.  Indeed, there is no such thing as 25-year parole eligibility mentioned in the PCRA.  The PCRA states, in pertinent part, that "[w]henever confined and serving a definite term or terms of more than one year, a prisoner shall

---

[1] The PCRA was repealed effective November 1, 1987.  Because Petitioner was sentenced in 1985, however, the PCRA still applies to his sentence and therefore must be considered by this Court.

be eligible for release on parole . . . after serving ten years of a life sentence . . . ." 18 U.S.C. § 4205(a). Further, the PCRA provides for parole after serving 30 years of a life term unless the Parole Commission finds that a prisoner has consistently violated institutional rules while incarcerated or is likely to commit an offense after release. 18 U.S.C. § 4206(d). The PCRA thus gives Petitioner a ten-year parole eligibility date and a 30-year conditional release date, but no 25-year eligibility date. The PCRA therefore cannot offer Petitioner the relief he seeks.

But Petitioner's original argument, set forth in the Petition on which the Magistrate Judge based her R&R, is more compelling. As noted previously, that argument states that "[t]he BOP's re-computation of the sentence, sua sponte, after the § 924(c) [offense] had been served, violated due process and the double jeopardy clause of the Fifth Amendment and usurped the authority of the Parole Commission." (Pet. at 9.) Pursuant to BOP guidelines at the time of Petitioner's sentencing, Petitioner was slated to first serve his five-year sentence for Count 10, and then begin his life sentence on all other Counts. That is precisely what happened. As Petitioner notes, after serving his sentence on Count 10—3 years, 7 months with good time credit—his life sentence commenced in 1988.

Pursuant to 18 U.S.C. § 4205(a), then, Petitioner was eligible for parole in 1998; indeed, the Parole Commission acted consistently with this requirement in January 1998, when it held that Petitioner should next be considered for parole 15 years thence. But less than two months after the Commission's determination, the BOP re-computed Petitioner's sentence such that Petitioner received no credit for serving his non-parolable sentence, Count 10, first. To be sure, the BOP also reconfigured Petitioner's parole eligibility date to 1995, presumably to fall in line with the dictates of 18 U.S.C. § 4205(a). Yet Petitioner's 15-year reconsideration date was not

reconfigured by the Parole Commission; therefore, Petitioner's next parole eligibility date will not be until 2013. And even if Petitioner is paroled at that time, he will still be subject to the five-year consecutive sentence attendant to Count 10, and thus would not be released until 2018, or 2016 at the earliest, assuming good behavior credit is given. This projected release date is outside the 30-year conditional release date of 2015 the PCRA affords.

The question, then, is whether Petitioner's "legal entitlement, right or liberty interest" has been harmed by the retroactive application of his parole eligibility date but not his 15-year reconsideration. This Court is well aware that there is no constitutional right to parole, <u>Greenholtz v. Neb. Penal Inmates</u>, 442 U.S. 1, 7 (1979), and therefore finds no infirmity per se in the Parole Commission's 15-year reconsideration finding. Additionally, the mere re-computation of Petitioner's sentence by the BOP does not appear to offend any constitutionally protected right. But the combination of these two decisions, namely, the fact that Petitioner's sentence was re-computed and his parole eligibility date altered while his 15-year reconsideration date was left untouched, might indeed infringe on Petitioner's actual liberty interest.

This question, and numerous derivative questions, have not yet been answered by record evidence. For example, although the BOP relied on the Supreme Court's decision in <u>Gonzales</u> to revamp its guidelines for ordering sentences, there is no indication in that decision that the BOP was required to do so, let alone that it was required to apply those guidelines retroactively. Is the BOP's decision to retroactively apply those guidelines to Petitioner's sentence, in conjunction with the Parole Commission's failure or refusal to make its 15-year parole reconsideration retroactive to Petitioner's new parole eligibility date, a deprivation of Petitioner's liberty interest?

Additionally, it is obvious that the Parole Commission did not make its 15-year parole

reconsideration retroactive at the outset because its decision was rendered two months prior to the BOP's re-computation of Petitioner's sentence. Yet this does not explain why the Commission did not retroactively apply its decision in subsequent appeals hearings in 2000, 2002, and 2004. Did the Commission consider Petitioner's re-computed parole eligibility date in these subsequent hearings? Was such an issue raised by Petitioner? Was it even appropriate to raise that issue in those hearings?

The Court notes that, because the Magistrate Judge concentrated largely on the abuse of writ claim in her recommendation below, she has not yet had the opportunity to fully develop the record to this end. The Court believes such development is necessary to effectively ensure that, as the Government recognizes, Petitioner is "protect[ed] against the arbitrary actions of the government which affect [his] life, liberty, or property interest." (Gov't's Resp. to Pet. at 11.)

**THEREFORE, IT IS HEREBY ORDERED THAT:**

Magistrate Judge Mayeron's R&R (Doc. No. 9) is **ADOPTED in part** and **REMANDED in part** for further proceedings consistent with this Order.

Dated:   February 10, 2011

                                                     s/Susan Richard Nelson
                                                     SUSAN RICHARD NELSON
                                                     United States District Court Judge