UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

JAMES K. MULLER,                                    CIVIL NO. 10-495 (SRN/JSM)

      Petitioner,

v.                                                              **REPORT AND RECOMMENDATION**

SCOTT FISHER, Warden, FCI-Sandstone,

      Respondent.

_____

      JANIE S. MAYERON, United States Magistrate Judge.

      This matter is before the undersigned Magistrate Judge of the District Court on Petitioner, James K. Muller's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [Docket No. 1].  The matter has been referred to this Court for a Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c).

## I.    INTRODUCTION

      On December 1, 2010, this Court issued a Report and Recommendation recommending that James K. Muller's ("Muller") Petition for a Writ of Habeas Corpus be dismissed pursuant to the doctrine of abuse of the writ and on the basis that his due process and double jeopardy claims were without merit.  [Docket No. 9]  Muller filed objections to this Report and Recommendation.  [Docket No. 10].  On February 15, 2011, United States District Judge Susan R. Nelson issued an Order [Docket No. 21], remanding the case back to this Court for further consideration of Muller's Due Process claim.

## II.      FACTUAL BACKGROUND

On January 28, 1985, Muller was arrested by federal authorities in the State of Hawaii for murder and attempted murder.  See Declaration of J. Scott Farr ("Farr Decl.") [Docket No. 6], ¶ 4.  On July 30, 1985, Muller was sentenced in the United District Court District of Hawaii on eight different offenses as follows:

- 90 months for Counts 3 and 4: Conspiracy to Commit Simple Assault, 18 U.S.C. §§ 371 and 113(e);

- Life term of imprisonment for Count 5: First Degree Felony Murder, 18 U.S.C. § 1111;

- 25 years for Count 6: 2nd Degree Murder, 18 U.S.C. §1111;

- 5 years each for Counts 7 and 8: Kidnaping,18 U.S.C. § 1201(a)(2);

- 20 years for Count 9: Assault With Intent to Commit Murder, 18 U.S.C. § 113(a); and

- 5 years for Count 10: Illegal Possession of a Firearm, 18 U.S.C. § 924(c).

Id., ¶ 5, Attach. 3 (Judgment and Probation/Commitment Order).

The sentences for Counts 3, 4, 6, 7, 8, and 9 were ordered to run concurrently with the life sentence for Count 5.  Id.  Count 10 for the § 924(c) violation was ordered to run consecutively with Count 5.  Id.  Consequently, Muller's total term of imprisonment was life plus five years.  Id.

The Judgment did not provide the order Counts 5 and 10 were to run.  Prior to the United States Supreme Court's ruling in United States v. Gonzalez, 520 U.S. 1

(1997), the Bureau of Prisons ("BOP") required that the non-paroleable § 924(c)[1] offense be served before the paroleable offense. Id., ¶ 10.  Under this practice, Muller was required to first serve his five-year non-parolable § 924(c) sentence, and then serve his life sentence, for which he would be eligible for parole ten years into the life sentence.  According to Muller, he had completed his sentence for the § 924(c) offense (3 years and 7 months, with good time credit) in 1998 and had begun serving the life sentence.  See Memorandum of Law in Support of Motion to Correct Computation of Sentence, Pursuant to 28 U.S.C. § 2241 [Docket No. 2] ("Petitioner's Mem."), p. 3.  By statute, after serving ten years into his life sentence, Muller was eligible for parole in 1998.  See 18 U.S.C. § 4205(a) ("Whenever confined and serving a definite term or terms of more than one year, a prisoner shall be eligible for release on parole after serving one-third of such term or terms or after serving ten years of a life sentence or of a sentence of over thirty years, except to the extent otherwise provided by law.").

In 1997, the Supreme Court held that the plain language of § 924(c) did not require that the firearms offense be served before any other offense.  Gonzalez, 520 U.S. at 6-8.  Based on Gonzalez, the BOP subsequently issued guidelines providing that the order of a sentence would be dependent on the order the counts were listed in a judgment.  See Farr Decl., ¶ 10, Attach 6 (Program Statement 5880.30, Chapter, VII), p. 16E.  In Muller's case, the § 924(c) offense is listed as Count 10, the last count stated in the Judgment.  Id., ¶ 5, Attach. 3.

---

[1]     Muller was convicted under 18 U.S.C. § 924(c), part of which provided at the relevant time that "[n]o person sentenced under this subsection shall be eligible for parole during the term of imprisonment imposed herein."

On January 30, 1998, the United States Parole Commission ("USPC") issued a notice to Muller, which provided that it was continuing his parole consideration from 1988 until January 2013, based on his underlying offense and the three non-drug infractions he had committed while incarcerated.  Id., ¶ 6, Attach. 5 (USPC Notice of Action).   The USPC also informed Muller that he was entitled to a statutory interim hearing in January of 2000.  Id.

On February 3, 1998, Muller appealed that decision.  See Muller v. Zuercher, NO. 07-CV-1142 (C.D. Ill.) ("Muller I"), Docket No. 10-1, Govt.'s Appx. 4.   In March 1998, and while this appeal was pending, the BOP re-ordered Muller's sentences, requiring the life sentence to run first.  See Declaration of Angie Coyle ("Coyle Decl.") [Docket No. 7], Ex. A (Government Response to Petitioner's § 2241 petition in the Central District of Illinois); Appx. 6, pp. 2-3 (Sentencing Monitoring Computation Data as of 10-23-2007); see also Farr Decl., ¶ 10.   This re-reordering resulted in the recalculation of Muller's parole date.  Id.  Consequently, parole eligibility on Muller's life sentence was set at January 27, 1995, ten years after the commencement of his custody.  See Farr Decl., ¶ 6, Attach. 4 (Public Information Inmate Data), p. 4 of 4; see also Coyle Decl., Ex. A, Appx. 6, p. 3.

Pursuant to 18 U.S.C. § 4206(d), an inmate eligible for parole is entitled to a parole review by the USPC after the inmate has completed two-thirds of his or her sentence.  See Farr Decl., ¶ 7.   Under 18 U.S.C. § 4206(d), "any sentence that is forty-five years or longer (including a life sentence) will be eligible for parole under this section (18 USC 4206(d)) after serving thirty years."[2]  See also Farr Decl., Attach. 8

---

[2]      The full text of 18 U.S.C. § 4206(d) provides:

(Program Statement 5880.30, Chapter, VII), p. 13.  In this case, Muller's two-thirds date was re-calculated as January 27, 2015, twenty years after parole eligibility.  Id., ¶ 7, Attach. 4 (Public Information Inmate Data), p. 4 of 4; see also Coyle Decl., Ex. A, Appx. 6, p. 3.  Pursuant to the re-ordering and re-computation of the sentences, Muller will begin to serve his sentence for his non-parolable § 924(c) offense on the parole date of the life sentence.  See Farr Decl., ¶ 8.

On May 1, 1998, the National Appeals Board issued a decision affirming the USPC's decision regarding the 2013 reconsideration hearing date.  See Muller I, Docket No. 10-1, Appx. 5.  Although this decision occurred after the re-ordering of Muller's sentences by the BOP, it made no mention of the re-ordering in the decision.  Id.

An interim hearing by the USPC on the 2013 reconsideration hearing date was held on March 6, 2000, and on April 5, 2000, the date was reaffirmed.  Muller I, Docket No. 10-1, Appxs. 6 (SIH/Review Hearing Summary dated March 13, 2000), 7 (Notice of Action dated April 5, 2000).

On April 16, 2002, Muller had his next interim hearing on the 2013 reconsideration hearing date.  In connection with this hearing, on January 15, 2002, Muller expressly raised the re-ordering of his sentences.  See Muller I, Docket No. 7

---

Any prisoner, serving a sentence of five years or longer, who is not earlier released under this section or any other applicable provision of law, shall be released on parole after having served two-thirds of each consecutive term or terms, or after serving thirty years of each consecutive term or terms of more than forty-five years including any life term, whichever is earlier: Provided, however, That the Commission shall not release such prisoner if it determines that he has seriously or frequently violated institution rules and regulations or that there is a reasonable probability that he will commit any Federal, State, or local crime.

(Reply to Warden's Response to the Habeas Corpus Petition), p. 4 (citing Exhibit D (submission dated January 15, 2002 to USPC challenging re-ordering of sentences based on U.S. v. Gonzalez)).  Muller argued:

> Had the Bureau of Prisons initially properly calculated the service of sentence. [sic] Mr. Muller would have been eligible for initial parole consideration in 1995, and not in 1998.  And the same decision that was made by the Parole Commission would have set a reconsideration date of January 2010, and not in January 2013, which is the Orelief [sic] that Mr. Muller have made here.

Muller I, Docket No. 7, Exhibit D, p. 5.

In summarizing the April 16, 2002 hearing, the USPC stated:

> **VII. Evaluation:**
>
> Subject is serving a Life sentence plus 5 years for an extremely serious offense of Murder and 5 year [sic] is for Firearm Violation. Subject requests that the Commission give him a 15 year reconsideration date from his parole eligibility date rather than the 5 years unparolable sentence commencing and then after the satisfaction of the 5 years sentence the Life term commencing. Thus, that would be a difference of about 3 years, 4 months earlier for a Reconsideration Hearing rather than the present 15 years Reconsideration Hearing in January 2013.
>
> Subject was advised that whether or not his firearm sentence was running initially or consecutively the Commission would take into account that the term prior to setting any release date. Subject is adjusting satisfactorily at this point, however, the accountability factor has not been satisfied in this case. [3]  Thus, this examiner is recommending there be no change in previous decision.

---

[3]  At the initial parole hearing, the hearing examiner stated that the "major issue in this case is one of accountability.  How much time is enough for the taking of 1 life and the attempted taking of a second life."  Muller I, Docket No. 10-1, Appx. 2 (Initial Hearing Summary dated January 6, 1998), p. 3.  The hearing examiner recommended a parole date of January 30, 2010, after service of 25 years. Id., p. 4. This recommendation was rejected and Muller was given a 15-year reconsideration date.  Id.; see also Appx. 3 (January 30, 1998 Notice of Action).

**VIII. Recommendation:**
No change and continue to a 15 years Reconsideration
Hearing in January 2013

<u>Muller I</u>, Docket No. 10-1 Appx. 8 (SIH/Review Hearing Summary dated May 12, 2002).

On May 23, 2002, the UPSC issued its decision on the interim hearing, stating – "[n]o

change to a 15-year Reconsideration date (January 2013)."  <u>Id.</u>, Appx. 9 (Notice of

Action dated May 23, 2002).  The June 9, 2004 and October 10, 2006 Notices of Action,

concerning interim hearings provided by the USPC, similarly provided "no change in 15-

year Reconsideration date January 2013."  <u>Id.</u>, Appxs. 10, 11.  Muller did not appeal any

of the interim hearing decisions.  <u>See</u> <u>Muller I</u> [Docket No. 10] (Response to Request for

Additional Briefing), pp. 4-5.

       In June 2007, Muller filed a § 2241 habeas petition in the Central District of

Illinois in <u>Muller I</u>, alleging that had the BOP not ordered him to serve his § 924(c)

sentence first, and instead allowed him to serve his life sentence before the § 924(c)

sentence as set forth in the sentencing court's commitment order, he would have been

eligible for parole three years earlier.  <u>See</u> Coyle Decl., Ex. B (Petitioner's § 2241

Habeas Petition in the Central District of Illinois), pp. 2-4.  Muller claimed this denial of

the earlier parole eligibility date violated his right to due process under the Fifth

Amendment.  In its response, the Government argued in part that the habeas petition

should be dismissed because Muller had not exhausted his administrative remedies.

<u>Muller I</u>, Docket No. 6 (Response to Habeas Corpus Petition), pp. 5-7.  The Illinois

district court initially determined that if Muller was "challenging the BOP"s decision to

reorder his sentences, then Petitioner had failed to exhaust his administrative

remedies," but if he was "challenging the [fifteen-year reconsideration date] decision of

the Parole Commission, then [he] may have properly exhausted his administrative remedies." Id., Docket No. 8 (January 3, 2008 Order), pp. 6-7. As to the merits of Muller's claim – i.e., that his constitutional rights were violated – the district court required further briefing by the parties because of certain concerns it had regarding the case. Id., p. 11. The Court quotes this portion of the Illinois district court's decision in full because of its importance to the issues now before this Court.

> This is not to say that this Court is not without concerns regarding the case at bar. The basis for this Court's concern is that the Parole Commission could have made their decision to deny Petitioner parole until 2013 without knowledge that Petitioner's sentences would be reordered. The Parole Commission made their decision in January of 1998. At that time, based upon Gonzales, Petitioner's sentences should have already been reordered. However, the BOP had not gotten around to reordering Petitioner's sentences yet. Then, based upon the record before the Court, three months later, in March of 1998, the BOP reordered Petitioner's sentences and placed the § 924(c) sentence after Petitioner's parolable life sentence. That is to say, when the Parole Commission made their decision in January of 1998, they set 2013 as the earliest possible date that they might release Petitioner on parole. However, after the reordering of the sentences, Petitioner's earliest possible release date was moved from 2013 until 2018 because his § 924(c) sentence was moved to the end of his term incarceration. It is possible, although unlikely, that the Parole Commission was not aware that Petitioner's sentences would be reordered when they made their decision and may not have extended Petitioner's earliest parole date to 2013 if they had known that an additional five years would be placed onto the end of Petitioner's sentence. Given the numerous appeals that Petitioner submitted to the Parole Commission that have all been rejected, this seems unlikely. However, since neither party has addressed this issue it is necessary for this Court to order additional briefing on the matter before this issue can be resolved.

Id., pp. 10-11.

The parties submitted supplemental briefing as required by the Illinois district court.  See Muller I, Docket Nos. 9, 10.  Based on that supplemental briefing, the court confirmed that Muller's constitutional challenge to the BOP's decision to reorder his sentences had not been exhausted.  Muller v. Zuercher, NO. 07-CV-1142, 2008 WL 4936724 at *2 (C.D. Ill. Nov. 17, 2008).  The court then rejected Muller's challenge to the USPC's decision to continue his parole eligibility hearing by 15 years, finding that it was rationally based on the aggravating circumstances of Muller's crime and the infractions he committed while in prison.  Id. at *4.  In so doing, the court explained that it was satisfied that had the USPC known on January 30, 2008 that Muller's sentences were to be re-ordered, it would not have changed its decision to deny parole and to set a reconsideration hearing for 2013.  Id. at *3.  Again, this Court quotes in full the relevant part of that decision.

> In its January 3, 2008 Order, the Court indicated a concern with the fact that the Commission determined the date of Petitioner's parole reconsideration hearing before the BOP switched the order of Petitioner's sentences in March 1998. Specifically, the Court was concerned that the Commission may not have been aware that Petitioner's sentences were due to be re-computed when the reconsideration date was set. The Court envisioned a scenario in which, had the Commission known that Petitioner's sentences were to be re-computed in light of Gonzalez, the Commission's decision as to Petitioner's parole eligibility would have been different. The Court noted that the Commission's possible lack of awareness as to the pending BOP re-computation of Petitioner's sentences ran the risk of producing a mistaken and arbitrary decision as to Petitioner's parole eligibility date.
>
> After reviewing all the evidence, including the parties' supplemental briefs, the Court is satisfied that, had the Commission known on January 30, 2008 that Petitioner's sentences were to be re-computed, the Commission would not have changed its decision to deny parole and to set a reconsideration hearing for 2013. The Court makes this

finding based on the subsequent affirmations of the Commission's January 30, 1998 decision. As Respondent's supplemental brief makes clear, the National Appeals Board affirmed the Commission's decision on May 1, 1998. In addition, the Commission reaffirmed its own decision in 2000, 2002, 2004, and 2006. Each of these affirmations, quite obviously, came after Petitioner's sentences were re-computed in March 1998 in light of the <u>Gonzalez</u> decision. Therefore, the fact that Petitioner's sentences were re-computed was information readily available and accessible to the Commission and Appeals Board at the time those bodies affirmed the Commission's January 30, 1998 decision. Yet that information appears to have had no effect upon the initial decision to set a parole reconsideration hearing in 2013. Further, the subsequent affirmations of the Commissions January 30, 1998 decision also lead to the conclusion that, had Petitioner been afforded a parole hearing when he requested one in 1995, he would have been denied parole.

<u>Id.</u>

## III.   ANALYSIS

In the Order remanding the Petition back to this Court for further consideration, the District Court observed that because Muller's 15-year reconsideration hearing date was not reconfigured by the USPC, his next parole eligibility date would not be until 2013.  February 15, 2011 Order [Docket No. 21], p. 7.  Further, even if Muller were paroled at that time, the District Court observed that he would "still be subject to the five-year consecutive sentence attendant to Count 10, and thus would not be released until 2018, or 2016 at the earliest, assuming good behavior credit is given," which was "outside the 30-year conditional release date of 2015 the PCRA affords."   <u>Id.</u> Consequently, the District Court asked, "is the BOP's decision to retroactively apply those guidelines to Petitioner's sentence, in conjunction with the USPC's failure or refusal to make its 15-year reconsideration retroactive to Petitioner's new parole

eligibility date, a deprivation of Petitioner's liberty interest?"  Id.  In raising this question, the District Court did not take issue with the USPC's 15-year reconsideration finding or the BOP's re-ordering of the sentence; rather it was "the combination of these two issues, namely, the fact that Petitioner's sentence was recomputed and his parole eligibility date altered, while his 15-year reconsideration date was left untouched, [that] might infringe on Petitioner's actual liberty interest."  Id.  Acknowledging that the USPC made its 15-year reconsideration decision before the re-ordering of the sentence by the BOP, the District Court indicated that "this did not explain why the Commission did not retroactively apply its decision in subsequent appeal hearings in 2000, 2002, and 2004." Id., p. 8.  The Court also wanted to know if the USPC considered the re-computed parole eligibility date in subsequent hearings, if such an issue was raised by Muller, or whether it was even appropriate to raise that issue in those hearings. Id.

        Courts have long held that there is a liberty interest in parole, though no right to be paroled at any time.  Bennett v. Bogan, 66 F.3d 812, 818 (6th Cir. 1995) ("Due process protections apply to parole revocation proceedings because one has a liberty interest in parole.").   However, due process protections in the context of parole are flexible and based on the needs of the situation.  Id.  ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands.") (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).    While Bennett and Morrissey examined situations of parole revocation, a similar standard is applied to those individuals in prison with the possibility of parole.  Once an inmate serving a life sentence serves the discretionary minimum term set by the guidelines, he must be considered for parole at

the expiration of those guidelines.  See generally, Powell v. Ducharme, 998 F.2d 710,
712 (9th Cir. 1993).

The scheduling of initial hearings for parole is governed by 28 C.F.R § 2.12.
According to this regulation, because he was serving his life sentence first as a result of
BOP regulations, Muller was eligible for an initial hearing ten years after beginning his
sentence in 1995.  See 28 C.F.R. § 2.12(a) ("[I]n a case of a prisoner with a minimum
term of parole ineligibility of ten years or more, the initial hearing will be conducted nine
months prior to the completion of such a minimum term, or as soon thereafter as
practicable.").  Muller's hearing was held in January of 1998, approximately three years
later.  Failure to hold the hearing in 1995 did not violate due process when the only
remedy due—the hearing—has already been granted.   Nabors v. Warden, U.S.
Penitentiary, No. 92-3282, 1993 WL 55940 at *2 (10th Cir. Mar. 1, 1993).  Indeed, the
Eighth Circuit has previously held that delays of almost six years are cured by the later
holding of the hearing.  See Jones v. United States Bureau of Prisons, 903 F.2d 1178,
1181 (8th Cir. 1990); see also United States v. Miller, 599 F.2d 249, 251 (8th Cir. 1979)
(per curiam) ("When an inmate has not been afforded a timely hearing, the proper
course is to grant him a hearing at the earliest possible date, as was done here.").
Thus, the 1998 hearing cured any potential due process violation arising from the lack
of an initial hearing for Muller in 1995.

As for Muller's right to a timely reconsideration hearing, 28 C.F.R. § 2.12(b)
governs the provision of reconsideration hearings after the initial hearing.  It provides
that following initial hearing, the Commission shall (1) set a presumptive release date
(either by parole or by mandatory release) within fifteen years of the hearing; (2) set an

effective date of parole; or (3) continue the prisoner to a fifteen year reconsideration hearing pursuant to § 2.14(c)."  Here, the USPC followed subsection (3) and continued Muller's reconsideration hearing pursuant to 28 C.F.R. § 2.14(c).  By the plain language of the regulation, it was appropriate for the USPC to set the 15-year reconsideration hearing for 2013, which was 15 years after his initial hearing.  See, e.g., Gomez v. U.S. Parole Comm'n, 246 Fed. Appx. 102, 104 (3d Cir. 2007) (dating the reconsideration hearing from the initial hearing); Green v. McCall, 822 F.2d 284, 285 (2d Cir. 1987) ("[T]he Commission conducts an initial parole hearing . . . following which the Commission may set an 'effective date of parole,' . . . or schedule a hearing for consideration after 15 years.").  Thus, since Muller's 1998 hearing was valid, the Commission's decision to set his reconsideration date for 2013 was also lawful.

The remaining issue for this Court to examine is the interplay between the re-ordering of his sentences and the date for the reconsideration hearing.  In this regard, the Tenth Circuit's decision in Harris v. Hurley, 210 F.3d 389, 2000 WL 358388 (10th Cir.), cert. denied 531 U.S. 865 (2000) is instructive.  In October 1988, Harris the petitioner, plead guilty and was sentenced to a twenty-five year term of imprisonment for bank robbery and a five-year consecutive term for a § 924(c) charge.  Id. at *1.  The BOP initially ordered his sentence to start with the term for the nonparolable § 924(c) charge, followed by the service of the term for the parole-eligible bank robbery sentence.  Id.  In 1996, the BOP informed Harris that he would be first eligible for parole on March 4, 2001.  Id.  In March of 1998, Harris appealed the BOP's decision, arguing that he had been wrongly required to serve the § 924(c) term first, which deprived him of an earlier parole hearing.  Id. at *2.  In April of 1998, the BOP notified Harris that it

was re-ordering his sentence based on <u>Gonzalez</u> and that he would be serving the sentence on the bank robbery first followed by the term for the § 924(c) offense.  <u>Id.</u> Based on the re-ordering of the sentence and the BOP's new parole calculation, Harris became eligible for parole on September 9, 1996, almost five years earlier than the initial March 4, 2001 eligibility calculation.  <u>Id.</u>  As the result of the new calculation, Harris received a parole hearing in December 1998, at which time the USPC decided that he should receive a presumptive parole after the service of 188 months, after which he would begin to serve the § 924(c) sentence.  <u>Id.</u>  Harris filed a habeas petition asserting, in part, that because he did not receive a parole hearing until after the September 9, 1996 date, under the new method of calculating his sentence, the BOP violated his rights under the due process clause.  <u>Id.</u>  The district court rejected his claims.  The appellate court affirmed, stating:

> Mr. Harris's due process challenge to the extension of the date of his parole hearing also fails. As the district court observed, the failure to hold a timely parole hearing does not violate due process unless the petitioner can show prejudice by the delay. <u>See</u> <u>Nabors v. Warden, U.S. Penitentiary</u>, No. 92-3282, 1993 WL 55940, at * 2 (10th Cir. Mar. 1, 1993) ("[B]ecause [petitioner] has already had his initial hearing and has shown no prejudice stemming from the delay, he has already received the only remedy that he is due."). Here, although Mr. Harris did not receive a parole hearing in September 1996 (the appropriate date if the Bureau of Prisons had initially determined that the § 2113 sentence should be served first), he did receive a hearing in December 1998. At that hearing the Parole Board established a presumptive parole date on the § 2113 sentence (after the service of 188 months). Mr. Harris has failed to establish that the Parole Board would have reached a different decision if the hearing had been held earlier.

<u>Id.</u> at *4; <u>see also</u> <u>Nabors</u>, 1993 WL 55940, at *2 ("We have previously held that the Commission's failure to hold timely hearings in the context of parole revocation and

dispositional reviews of detainers does not rise to the level of a due process violation unless the petitioner can show he was prejudiced by the delay.") (citations omitted); Miller, 599 F.2d at 251 ("the record does not disclose that Miller suffered any prejudice because of the delay. We conclude that Miller was not deprived of meaningful parole consideration.").

In this case, based on the re-ordering of the § 924(c) and life sentences, Muller's parole eligibility date was changed from 1998 to 1995, but his 15-year reconsideration date was not reconfigured from 2013 to 2010.  However, the UPSC's refusal to move up his reconsideration hearing date to 2010 did not amount to a violation of due process because he has not shown that it would have granted him parole at that time.  The Court reaches this conclusion on the basis that if the USPC was not willing to reconsider Muller's parole until 2013 based on his underlying offenses and prison infractions, there is no reason to find that it would have granted him parole if his reconsideration date had been held three years earlier in 2010 based on his background.  Indeed, at the initial hearing in 1998, the USPC considered and rejected a 2010 reconsideration hearing date in light of the offenses for which he had been convicted and the violations of prison rules.  See Muller I, Docket No. 10-1, Appxs. 2, 3.  Stated otherwise, there is no indication that had the USPC been aware in 1998 that the BOP had re-ordered Muller's sentences that it would have affected Muller's actual prison time.

Second, the evidence before the court in Muller I established that the USPC did have the opportunity to and did in fact examine the effect of re-ordering the sentence on Muller's parole eligibility.  Not only did the May 1, 1998 National Appeals Board's

decision affirming the USPC's decision regarding the 2013 reconsideration hearing date occur after the March 1998 re-ordering of Muller's sentences, but more importantly in 2002, Muller raised and the USPC expressly addressed and rejected his argument that the reconsideration hearing date should be accelerated as a result of the re-ordering of the sentences.  See Muller I, Docket Nos. 7, Exhibit D; 10-1, Appxs. 4, 5, 8 ("Subject was advised that whether or not his firearm sentence was running initially or consecutively the Commission would take into account that the term prior to setting any release date. Subject is adjusting satisfactorily at this point, however, the accountability factor has not been satisfied in this case. Thus, this examiner is recommending there be no change in previous decision. *** No change and continue to a 15 years Reconsideration Hearing in January 2013") (emphasis added).  In short, the USPC was aware of and did consider the effect of the BOP's re-ordering of Muller's sentences on the reconsideration hearing date, but did not change the date because it believed that 15 years was needed to address Muller's accountability for his crimes.  Third, Muller had the benefit of interim hearings in 2004 and 2006, which also resulted provided no change in 2013 reconsideration hearing.

Finally, the Court concludes that service of the § 924(c) sentence after parole in 2013, which could lead to a projected release date outside of the 30-year conditional release date provided by 18 U.S.C. § 4206(d), does not run afoul of this latter statute. Section 924(c) provided at the relevant time, that "[n]o person sentenced under this subsection shall be eligible for parole during the term of imprisonment imposed herein." The fact that Muller must serve the five-year non-parolable sentence following the 30-year conditional release sentence does not mean that he was prevented from

completing his parolable sentence within the 30 years contemplated by the life term sentence.

For all of these reasons, the Court finds that the re-ordering of Muller's sentences and initial parole eligibility date without the re-computation of his parole hearing reconsideration date, did not violate Muller's right to due process.   The Court appreciates that the BOP's re-ordering of sentences resulted in the retroactive application of his parole eligibility date but not his 15-year reconsideration date. However, based on the record, Muller did receive full consideration by the USPC of the effect of the BOP's re-ordering of his sentences and Muller has not shown that he was entitled to an earlier reconsideration date.   As such, Muller's for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 should be dismissed.

**III.     RECOMMENDATION**

Based on the foregoing, and all the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that:

Petitioner, James K. Muller's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [Docket No. 1] be **DISMISSED WITH PREJUDICE**.


Dated:   July 18, 2011



                                                      *s/ Janie S. Mayeron*
                                                      JANIE S. MAYERON
                                                      United States Magistrate Judge

**<u>NOTICE</u>**

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **August 2, 2011**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within fourteen days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.